**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YOLANDA FOLLORS,<br><br>                    Plaintiff,<br><br>          v.<br><br>SIX FLAGS GREAT ADVENTURE, LLC,<br><br>                    Defendant. | Civil Action No. 22-3144 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Six Flags Great Adventure, LLC's ("Defendant") Motion for Summary Judgment. (ECF No. 30.) Plaintiff Yolanda Follors ("Follors") responded (ECF No. 33), and Defendant replied (ECF No. 36). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion is denied.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    Undisputed Facts

Defendant is a limited liability company that operates an amusement park ("Six Flags") in Jackson, New Jersey. (Def.'s Statement Supp. Mot. Summ. J. ("DSMSJ") ¶¶ 8, 10, ECF No. 30-3; Pl.'s Resp. Statement of Material Facts ("PRSMF") ¶¶ 8, 10, ECF No. 33.) On August 29, 2021,

Follors, then a thirty-seven-year-old mother, bought four tickets to and entered Six Flags with three minors, including her daughter Janaya Burnett ("Burnett"). (DSMSJ ¶¶ 9-10; PRSMF ¶¶ 9-10.)

While visiting Six Flags, Follors received a phone call from one of the accompanying minors who stated that Burnett had lost her shoe while riding a Six Flags rollercoaster known as "Zumanjaro: Drop of Doom" ("Zumanjaro"). (*See* DSMSJ ¶ 11; PRSMF ¶ 11.) Follors then went to the Zumanjaro operator's booth, and she saw that Burnett's sneaker was on the second roof of a building that stood behind the operator's booth—an area that Six Flags had designated as restricted from the public ("Restricted Area"). (*See* DSMSJ ¶¶ 12-14; PRSMF ¶¶ 12-14.) This Restricted Area was separated by metal railing and a wooden fence from the Zumanjaro operator's booth. (*See* DSMSJ ¶¶ 17-19; PRSMF ¶¶ 17-19.)

Sometime after spotting Burnett's shoe, Follors entered the Restricted Area and walked to the back side of the building. (*See* DSMSJ ¶ 26; PRSMF ¶ 26.) To retrieve Burnett's shoe from the roof of the building, however, Follors had to climb two separate ladders. (*See* DSMSJ ¶¶ 26-43; PRSMF ¶¶ 26-43.) At the back of the building, Follors had access to a ladder at the ground level that was affixed to the building and led to the first roof level ("First Ladder"). (*See* DSMSJ ¶¶ 26; PRSMF ¶ 26.) Before using the First Ladder, Follors did not consider the ladder's safety or inspect the ladder (*see* DSMSJ ¶¶ 31-32; PRSMF ¶¶ 31-32), nor did she have training or education on ladder safety (*see* DSMSJ ¶¶ 28-30; PRSMF ¶¶ 28-30). She then climbed up the First Ladder. (DSMSJ ¶ 37; PRSMF ¶ 37.) Once on the first roof level, she then walked "about five to six steps" and had access to a free-standing unsecured ladder, which stood on top of the first roof level, in an attempt to gain access to the second roof level ("Second Ladder" and together with the First Ladder, the "Ladders") (*See* DSMSJ ¶¶ 35-36; *see also* PRSMF ¶¶ 35-36). Before using the Second Ladder, Follors, again did not consider the ladder's safety or inspect the ladder. (DSMSJ

2

¶¶ 38, 42; PRSMF ¶¶ 38, 42.) Determined to retrieve Burnett's shoe, Follors began to climb the Second Ladder. (*See* DSMSJ ¶ 43; PRSMF ¶ 43.) After reaching about the "fourth or fifth" rung of the Second Ladder, it slid from under her, causing her to fall onto the first roof level. (DSMSJ ¶ 43; PRSMF ¶ 43.) Following this incident—Follors entering the Restricted Area to retrieve Burnett's shoe and falling on the first roof level—she was charged with criminal trespass.[1] (DSMSJ ¶ 46; PRSMF ¶ 46.)

### 2.    *Disputed Facts*

The parties primarily dispute the events that occurred between Follors arriving at the Zumanjaro operator's booth and her entering the Restricted Area to retrieve Burnett's shoe. (*See* DSMSJ ¶¶ 22-25; PRSMF ¶¶ 22-25.)[2]

Defendant maintains that none of its employees permitted Follors to enter the Restricted Area. (*See* DSMSJ ¶ 22.) It asserts that there was a warning sign on the wooden fence separating the guests from the Restricted Area (*id.* ¶ 19), which Follors failed to investigate or perceive when she entered the Restricted Area (*id.* ¶ 21). Brian Gripp ("Gripp"), a Six Flags employee working when Burnett lost her shoe, denies seeing[3] Follors walk through the Zumanjaro operator's booth—the only authorized way to access the Restricted Area. (*See id.* ¶ 23.) Defendant, therefore, contends that Follors had to have climbed over a metal railing and a wooden fence to enter the Restricted Area because that was the only other way to gain access to the Restricted Area. (*See id.*

---

[1] Follors, however, notes that the criminal trespass charge against her was later dropped by the prosecutor. (*See* PRSMF ¶ 46.)

[2] (*See* Def.'s Moving Br. 16, ECF No. 30-4 ("[H]ow [Follors] first gained access to the 'Restricted Area' [is] contested.").)

[3] The Court, however, notes that Gripp testified that he "did not see [Follors] jump the fence," (Dep. Tr. of Gripp 42:21-24, ECF No. 30-13), but also later testified that he "saw her walk through the [fence], through the like little opening" (Dep. Tr. of Gripp 44:13-17).

¶ 24.) Defendant further maintains that after Gripp saw Follors entering the Restricted Area (*see* Dep. Tr. of Gripp 43:6-11), he commanded Follors not to enter the area (DSMSJ ¶ 25). Gripp subsequently called security when Follors ignored his commands. (*Id.*)

Follors disagrees. (*See* PRSMF ¶¶ 22-25.) Follors contends that Deidria Omeally ("Omeally"), Gripp's supervisor and a Six Flags ride operator who was present at the Zumanjaro operator's booth, not only permitted but also instructed Follors to enter the Restricted Area to retrieve Burnett's shoe. (*See* Pl.'s Supp. Statement of Material Facts ("PSSMF") ¶¶ 6, 8, 20-21, ECF No. 33.) Follors maintains that, to enter the Restricted Area, she passed through the partition area through the Zumanjaro operator's booth (PRSMF ¶ 24), and that no one instructed her not to enter the area (*see id.* ¶ 25; Pl.'s Dep. Tr. 138:12-15, ECF No. 33-4). Follors further maintains that there were no warning signs related to the Restricted Area when she walked up to the wooden fence. (*See* Pl.'s Dep. Tr. 135:1-8.)

### B.    Procedural History

On April 26, 2022, Follors filed a Complaint against Defendant in the Superior Court of New Jersey. (Compl. *6, ECF No. 1-3.)[4] The Complaint contains four counts sounding in negligence: (1) Negligence of Defendant's Employees (Count I); (2) Vicarious Liability (Count II); (3) Negligence of Defendant (Count III); and (4) Fictitious Parties (Count IV). (*Id.* at *8-12.) In short, the gravamen of Follors's Complaint is that Defendant and its employees were negligent in directing her to enter the Restricted Area to retrieve her daughter's shoe, which led to her fall, causing her to sustain injuries to her leg. (*See generally id.*)

Defendant timely removed this action to federal court, invoking the Court's diversity jurisdiction. (*See generally* Notice of Removal, ECF No. 1.) Following discovery, Defendant

---

[4] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

moved for summary judgment. (ECF No. 30.) Follors opposed (ECF No. 33), and Defendant replied (ECF No. 36). This matter is now ripe for consideration.

## II.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine [dispute] as to any material fact," however, if a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

### III.    <u>DISCUSSION</u>[5]

Defendant moves for summary judgment on Follors's negligence claims. (*See generally* Def.'s Moving Br., ECF No. 30-4.) In moving for summary judgment, Defendant primarily argues that Follors cannot establish that it owed a duty of care to her.[6] (*See id.* at 12-20.) Defendant also argues that even if it owed a duty, Follors cannot establish that it breached that duty or that its purported breach was the proximate cause of her injuries.[7] (*See id.* at 20-23.) Follors counters that questions of fact exist as to whether Defendant breached its duty by failing to warn or make safe the dangerous condition of the Second Ladder. (Pl.'s Opp'n Br. 9, ECF No. 33-2.) As to causation, Follors argues that she has set forth sufficient facts from which a jury could find that she suffered an injury caused by the Second Ladder. (*See id.* at 20-23.)

To establish a cause of action for negligence under New Jersey law, a plaintiff must prove four elements: "(1) a duty of care[;] (2) a breach of that duty[;] (3) proximate cause[;] and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (citation omitted).

---

[5] As a federal court sitting in diversity, the Court applies New Jersey's substantive law. *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[6] Defendant argues that liability is precluded because Follors engaged in an open and obvious risk. (Def.'s Moving Br. 4-5.)

[7] Defendant argues that although it did owe a duty to its invitees to provide a reasonable safe premises, Follors cannot establish that it breached that duty because it did not have actual or constructive knowledge of the dangerous condition of the Second Ladder. (Def.'s Reply Br. 22, ECF No. 36.)

### A.    Duty of Care

The Court first considers whether Defendant owed a duty to Follors and, if so, the scope of that duty.

The existence and scope of a duty of care are legal issues to be determined by the court. *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) (citing *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209, 212 (N.J. 1996)). Generally, whether and to what extent a landowner owes a duty to an injured guest depends on whether the injured guest's status was "that of a business invitee, licensee, or trespasser." [8] *Est. of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1254 (N.J. 2013) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993)).

Here, it is undisputed that Defendant is a business owner and that Follors was a business invitee. *See Hopkins*, 625 A.2d at 1113 (finding that a business invitee is an individual that has "been invited on the premises for purposes of the owner," often for commercial purposes). As such, Defendant owed Follors a general duty of care to maintain a safe premises.[9] *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 691 (N.J. 2010) (citations omitted) ("It is well recognized that the common law imposes a duty of care on business owners to maintain a safe premises for

---

[8] Generally, an injured party's status does not "determine . . . a landowner's liability for injuries, [but] an injured party's status is . . . helpful in determining the existence and scope of the duty of care owed." *Amentler v. 69 Main St.*, No. 08-351, 2011 WL 1362594, at *5 (D.N.J. Apr. 11, 2011) (citations omitted); *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993) ("The [duty] analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct."). If, however, the plaintiff falls into the predetermined category of an invitee, licensee, or trespasser, the category itself establishes the duty. *See Rowe v. Mazel Thirty, LLC*, 34 A.3d 1248, 1254 (N.J. 2012) ("The common law categories are a shorthand, in well-established classes of cases, for the duty analysis . . . . The only difference is that, through the evolution of our common law, the duty analysis has already been performed in respect of invitees, licensees (social guests), and trespassers.").

[9] Defendant acknowledges this general duty of care. (Def.'s Moving Br. 13 ("[A] business proprietor has a duty to customers to provide reasonably safe premises.").)

their business invitees because the law recognizes that an owner is in the best position to prevent harm."); *see also Butler v. Acme Mkts., Inc.*, 445 A.2d 1141, 1143 (N.J. 1982) ("The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation."). This general duty to provide a safe premises requires a business owner "to guard against any dangerous conditions on [its] property that [it] either knows about or should have discovered." *Hopkins*, 625 A.2d at 1113; *see also Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003) (explaining that business owners owe a duty of due care to their customers to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe). Accordingly, the Court finds that Defendant owed Follors a duty "to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (citing *O'Shea v. K. Mart Corp.*, 701 A.2d 475, 476 (N.J. Super. Ct. App. Div. 1997)).

Before turning to breach, the Court will address Defendant's argument that it owed no duty (or is otherwise relieved from its duty) to Follors because she engaged in an open and obvious risk. (*See* Def.'s Moving Br. 4-5.) More specifically, Defendant argues that, while it owes a duty to Follors to provide a reasonably safe premises, it had no duty to protect Follors from the Second Ladder because she voluntarily engaged in an open and obvious risk when entering the Restricted Area to use the Second Ladder to retrieve Burnett's shoe. (*See id.*) Put differently, Defendant argues that any liability is precluded because Follors engaged in self-evident dangerous

activities.[10] (*See id.*) Follors, on the other hand, argues that Defendant still "owed her a duty of reasonable care to guard against the dangerous condition posed by the . . . [Second L]adder between the first and second [levels of the roof] of the . . . building in the Restricted Area" even if it were open and obvious, which it is not, because it was aware of the potential danger of harm. (*See* Pl.'s Opp'n Br. 19-20.)

New Jersey courts are reluctant to grant summary judgment based on a lack of duty to warn when record evidence shows that an invitee is unfamiliar with the premises and, therefore, unaware of the dangerous condition. *See, e.g., Parks v. Rogers*, 825 A.2d 1128, 1134 (N.J. 2003) (reversing summary judgment in favor of landowners where plaintiff, who fell down the stairs during her first visit to defendants' house, did not realize "the handrail did not extend the full length of the stairway"); *Sussman v. Mermer*, 862 A.2d 572, 575 (N.J. Super. Ct. App. Div. 2004) (finding a genuine dispute of material fact existed as to whether plaintiff, who was injured while exiting defendants' home from the front porch, had ever used the front porch previously); *Campbell v. Hastings*, 791 A.2d 1081, 1085 (N.J. Super. Ct. App. Div. 2002) (reversing summary judgment in favor of homeowner where plaintiff, who had never been in defendant's home before, "fell into" a sunken foyer).

Here, the Court is reluctant to conclude as a matter of law that, under the circumstances, entering the Restricted Area to use the Second Ladder constituted an open and obvious risk to a reasonable person in Follors's position. Defendant acknowledges that the record evidence demonstrates that Follors did not appreciate any inherent danger or risk associated with using the Second Ladder. (Def.'s Moving Br. 9 ("[Follors] admits she never considered it may be dangerous

---

[10] Follors concedes "that liability may generally be precluded when [a] plaintiff knew or had reason to know of the risk involved in taking an action, or the risk of an action is open, obvious, and easily understood." (Pl.'s Opp'n Br. 10.)

or unsafe to climb [the Second Ladder]." (citing Pl.'s Dep. Tr. 139:7-23)).) Defendant further acknowledges that Follors was an ordinary person when using the Second Ladder and "ha[d] never received any type of ladder safety training, courses, or education." (*Id.* at 8 (citing Pl.'s Dep. Tr. 21:23-24:22).) Follors contends that she was instructed by Omeally to retrieve Burnett's shoe on her own. (PSSMF ¶ 8 ("[Follors] and [Burnett] . . . testified that . . . Omeally gave [them] instructions regarding how to enter the restricted area . . . and stated that [Follors] could climb . . . [the L]adders onto the roof to retrieve the shoe."); *see also* Pl.'s Dep. Tr. 99:12-100:1.) Follors also contends that along with those instructions, Omeally permitted her to retrieve the shoe, stating that "*people go get their . . . stuff all the time*" and that if she wants to, she "*can go get [her] own sneaker*" (Pl.'s Dep. Tr. 98:19-99:1 (emphasis added)), and further stating "go ahead, you're not going to get in trouble" (*id.* at 99:2-6). But, contrary to Follors's contentions, Defendant maintains that the record evidence demonstrates that Follors was commanded not to enter into the Restricted Area by its employees; instead, Follors "voluntarily decided, under her own free will, to [enter the Restricted Area and] essentially scale up the sides of a 20-22 foot building inside of an amusement park."[11] (*See* Def.'s Reply Br. 17, ECF No. 36.) Defendant further maintains that, after Gripp observed Follors entering the Restricted Area, Gripp commanded Follors not to do so and told her to leave. (*Id.* at 11 (citing Dep. Tr. of Gripp 42:1-13).)

Viewing this evidence in the light most favorable to Follors, a reasonable factfinder could conclude that a person in Follors's position would not have considered the Second Ladder in the Restricted Area to be an open and obvious risk. *See Bagnana v. Wolfinger*, 895 A.2d 1180, 1184-85 (N.J. Super. Ct. App. Div. 2006) (finding that a reasonable jury could conclude that

---

[11] Defendant also concedes that "how [Follors] first gained access to the 'Restricted Area' [is] contested." (Def.'s Moving Br. 16.)

defendants-owners of a trampoline owed a duty to plaintiffs-guests who were injured while using the defendants' trampoline because the risk was not obvious to plaintiffs because they were inexperienced in trampolines and that defendants failed to either disclose or remove the danger). The Court, therefore, finds that a genuine dispute of material fact exists as to whether entering the Restricted Area to use the Second Ladder constituted an open and obvious risk.

Even if the Court were to conclude as a matter of law that entering the Restricted Area to climb the Second Ladder was an open and obvious risk, Defendant would not be absolved of its duty if "[it] *should [have] anticipate[d] the harm* despite such knowledge or obviousness." *La Russa v. Four Points at Sheraton Hotel*, 821 A.2d 1168, 1172-73 (N.J. Super. Ct. App. Div. 2003) (quoting Restatement (Second) of Torts § 343A(1) (1965)).[12] Here, the Court finds that Follors points to sufficient evidence for a jury to conclude that Defendant should have anticipated the harm despite such knowledge or obviousness. For example, Follors points to evidence that Defendant's maintenance employee, Francis Holiday ("Holiday"), set the Second Ladder up and knew it was unsafe. (Dep. Tr. of Holiday 40:17-25, ECF No. 33-7 ("I went up on the lower roof . . . . I took the [Second L]adder out from underneath the ductwork, got up onto the ductwork"); *see also id.* at 41:3-6 ("I put the [Second L]adder against the wall. I went to step up on the [Second L]adder and

---

[12] Comment f to Section 343A of the Restatement summarizes this principle: There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases, the possessor is not relieved of the duty of reasonable care which it owes to the invitee for her protection. This duty may require it to warn the invitee, or to take other reasonable steps to protect her, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. Restatement (Second) of Torts § 343A, cmt. f. (emphasis added).

said to myself, *it's not safe*.").)[13] Omeally, whom Follors testified had permitted and instructed her to use the Ladders to retrieve Burnett's shoe (PSSMF ¶ 8; Pl.'s Dep. Tr. 99:12-100:1), had also spoken to Holiday before he set up the Second Ladder (*see* Dep. Tr. of Holiday 40:19-25 ("I went to the [Zumanjaro operator's] booth to talk to[Omeally]. . . . [Then,] I went up on the lower roof[.]").) Omeally, therefore, by permitting and instructing Follors to retrieve Burnett's shoe using the Second Ladder, after being told that it was unsafe, should have anticipated the potential harm to Follors despite the purported known and obvious risk. (*See* Dep. Tr. of Holiday 40:19-41:9 (testifying that he explained to Omeally, after first attempting to retrieve the shoe, that he was not going to climb the Second Ladder because it was unsafe)); *Lavecchia v. Walmart Inc.*, No. 20-9035, 2023 WL 4074059, at *2 (D.N.J. June 20, 2023) (explaining that a business owner of the potential harm of a dangerous condition when its employees become aware of it). As such, the Court finds that there is a genuine dispute of material fact as to whether Defendant should have anticipated the harm despite such knowledge or obviousness.

Because the Court finds that Follors points to sufficient evidence to create a trial issue of fact as to the issue of whether the dangerous condition was open and obvious and whether Defendant should have anticipated potential harm, as articulated above, Defendant's Motion on the issue of duty is denied.

### B.    Breach

Having found that Defendant owed a duty of care to maintain a safe premises to Follors, the Court next considers whether Defendant breached that duty.

---

[13] The Court also notes that a dispute of fact exists as to whether the Second Ladder had been put away by the time Follors made her own attempt. (*Compare* Dep. Tr. of Holiday 41:6-7 ("I took the [Second L]adder down, I put it back underneath the ductwork."), *with* Pl.'s Dep. Tr. 123:23-25 (testifying that the Second Ladder was "already set up").)

Defendant argues that Follors cannot establish that it breached its duty because it did not have actual or constructive knowledge that the Second Ladder in the Restricted Area posed an "unacceptable" danger to guests. (Def.'s Reply Br. 22.) Follors argues that Defendant breached its duty owed to her, as an invitee, by failing to: (1) inspect and maintain their premises in a reasonably safe condition; (2) follow its internal procedures to maintain a safe control of the area; and (3) follow internal procedures to maintain the security of guests by preventing access to the Restricted Area to use the Second Ladder. (Pl.'s Opp'n Br. 18-19.)

"Ordinarily an injured plaintiff asserting a breach of [a duty to a business invitee] must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia*, 818 A.2d at 314. That said, when an invitee is injured on a business owner's property, the business owner "is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident." *Jeter v. Sam's Club*, 271 A.3d 317, 324 (N.J. 2022) (citing *Prioleau v. Ky. Fried Chicken, Inc.*, 122 A.3d 328, 335 (N.J. 2015)). A business invitee in a premises liability action "must prove, as an element of the cause of action," that the business owner had actual or constructive knowledge of the dangerous condition. *Prioleau*, 122 A.3d at 335 (quoting *Nisivoccia*, 818 A.2d at 316). "A business owner has actual notice of a dangerous condition when it or its employees actually become aware of the condition." *Lavecchia*, 2023 WL 4074059, at 4* (citing *Prioleau v. Ky. Fried Chicken, Inc.*, 85 A.3d 1015, 1022 (N.J. Super. Ct. App. Div. 2014)). "Constructive notice is imputed to a business owner if a dangerous condition exists for a long enough period such that it would be discovered and corrected by a reasonably diligent business owner." *Id.* (citing *Parmenter v. Jarvis Drug Store, Inc.*, 138 A.2d 548, 550 (N.J. Super. Ct. App.

Div. 1957)). The absence of actual or constructive knowledge is "fatal" to a plaintiff's premises liability claim. *Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. Super. Ct. App. Div. 2013).

Here, Follors points to evidence that Defendant had actual notice of the dangerous condition because its employee, Holiday, "pulled . . . the [Second L]adder from under ductwork, and leaned it against the wall connecting the first roof to the second roof in an unsuccessful attempt to retrieve the shoe." (Pl.'s Opp'n Br. 2 (citing Dep. Tr. of Holiday 40:12-43:17).) Follors further points to evidence that a jury could find that Defendant actually knew the dangerous condition of the Second Ladder was unsafe. (*See* Dep. Tr. of Holiday at 41:3-6 ("I put the [Second L]adder against the wall. I went to step up on the [Second L]adder and said to myself, it's not safe.").) In other words, a jury could find that, since Holiday was aware of the dangerous condition of the Second Ladder, Defendant had actual notice of it. *Lavecchia*, 2023 WL 4074059 (explaining that "[a] business owner has actual notice of a dangerous condition when it or its employees actually become aware of the condition"). Even further, Follors submits that Defendant acknowledges a ladder's inherent risk by pointing to "[Defendant's] corporate representative and senior public safety manager, Brian Chamberlain['s], testi[mony] that [its] safety policies require portable ladders on site to be 'put away [when] done and stored. If they are left upright, they should usually have a rope or a chain so they don't fall over anybody.'" (Pl.'s Opp'n Br. 3 (quoting Dep. Tr. of Brian Chamberlain 79:19-80:2, ECF No. 33-12).) The parties, however, dispute whether the

14

dangerous condition of the Second Ladder was made safe[14] and whether Defendant warned Follors of its danger.[15]

Viewing this evidence in the light most favorable to Follors, the Court finds that a reasonable jury could find that Defendant had actual knowledge of the dangerous condition based on the record evidence. *Contra Danise v. Diversified Maint.*, No. 20-1263, 2023 WL 2263747, at *4 (D.N.J. Feb. 28, 2023) (concluding the plaintiffs could not establish actual notice of dangerous condition because there was no record evidence indicating the defendant "was actually aware of the water droplets on the hallway floor"); *see also Gray v. Caldwell Wood Prods., Inc.*, 42 A.3d 192, 196 (N.J. Super. Ct. App. Div. 2012) ("It is for a jury to determine whether the [business] owner had actual or constructive notice of the dangerous condition." (citation omitted)).

Because Follors points to evidence sufficient to show that Defendant had actual notice of the dangerous condition of the Second Ladder, the Court finds that a reasonable jury could conclude that Defendant breached its duty of reasonable care. As such, Defendant's Motion on the issue of breach is denied.

### B.    Proximate Causation

Defendant also moves for summary judgment as a matter of law on the ground that Follors cannot meet her burden of proving that it proximately caused her injuries because it could not have reasonably foreseen that the Second Ladder in the Restricted Area could cause Follors's injuries.

---

[14] The parties dispute whether the Second Ladder was left on the first level of the roof by Holiday before Follors entered the Restricted Area to climb it. (*Compare* Pl.'s Opp'n Br. 11 ("The evidence establishes that the [Second L]adder was likely situated *in situ* by . . . Holiday. . . ."), *with* Def.'s Reply Br. 8 ("Before coming down from the first-level roof, and while still visible to [Follors], Holiday testified he disassembled the [Second L]adder and placed it back down underneath the ductwork on the first-level roof surface." (citing Dep. Tr. Of Holiday 40:19-41:9, 72:7-72:22, 75:11-76:18, and 108:22-109:7)).)

[15] (Dep. Tr. of Gripp 43:6-11; Pl.'s Dep. Tr. 138:12-15.)

(Def.'s Moving Br. 20.) Defendant argues that Follors cannot establish proximate causation because her own actions served as "Intervening Reckless and Unreasonable Behavior." (*Id.*) Defendant further argues it cannot be liable as a matter of law because Follors acted recklessly and assumed the risk when entering the Restricted Area to climb the Ladders to acquire Burnett's shoe. (Def.'s Moving Br. 22 ("[Follors] . . . knowingly engage[d] in such reckless, dangerous and foolhardy behaviors which posed such an obvious risk of physical injury and which involved such open and obvious dangerous conditions.").)

It is well settled in New Jersey that "an actor acts recklessly when he or she intentionally commits an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." *Schick v. Ferolito*, 767 A.2d 962, 969 (N.J. 2001) (citation omitted). This standard, however, is "objective and may be proven by showing that a [party] proceeded in disregard of a high and excessive degree of danger either known . . . or apparent to a reasonable person in his or her position." *Id.* (citation and internal quotation marks omitted). At the outset, the Court finds, for many of the same reasons that it finds there to be disputes of fact governing whether Follors engaged in an open and obvious risk, that the record contains genuine disputes of fact as to whether Follors acted recklessly.

Proximate cause consists of "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Townsend*, 110 A.3d at 61 (quoting *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071 (N.J. 1996)). To establish causation, the plaintiff must:

> introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly

> balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Id.* at 66-68 (quoting *Davidson v. Slater*, 914 A.2d 282, 293 (N.J. 2007)). "Although proximate cause is ordinarily a jury issue, it may be ruled on as a matter of law when reasonable minds could not differ." *Firstmeyer v. Cohen*, No. A-0982-7T3, 2008 WL 2520794, at *1 (N.J. Super. Ct. App. Div. June 26, 2008) (citing *Fluehr v. City of Cape May*, 732 A.2d 1035, 1041 (N.J. 1999)). "[S]ummary judgment is appropriate where 'no reasonable jury could find that the plaintiff's injuries [have been] proximately caused by the' defendant's conduct." *Thompson v. Garden State Arts Ctr., Partners*, No. A-3299-5T5, 2007 WL 1598616, at *3 (N.J. Super. Ct. App. Div. June 5, 2007) (quoting *Vega v. Piedilato*, 713 A.2d 442, 449 (N.J. 1998)). "[T]he issue of a defendant's liability cannot be presented to the jury simply because there is some evidence of negligence; the plaintiff must introduce evidence that affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the plaintiff's injury." *Id.* (citing *Davidson*, 914 A.2d at 295).

"The proof required to establish a proximate cause[, however,] does not need to be absolute but only 'one of probability or likelihood.'" *Parks v. Pep Boys*, 659 A.2d 471, 474 (N.J. Super. Ct. App. Div. 1995) (quoting *Braitman v. Overlook Terrace Corp.*, 332 A.2d 212, 215 (N.J. Super. Ct. App. Div. 1974), *aff'd*, 346 A.2d 76 (N.J. 1975)). "Proof that will justify a reasonable probability as distinguished from mere possibility is all that the law requires." *Mazzietelle v. Belleville Nutley Buick Co.*, 134 A.2d 820, (N.J. Super. Ct. App. Div. 1957) (citing *Flexmir, Inc. v. Lindeman & Co.*, 73 A.2d 243, 245 (N.J. 1950)). "Furthermore, such proof 'can be established by circumstantial evidence.'" *Ocasio v. Amtrak*, 690 A.2d 682, 689 (N.J. Super. Ct. App. Div. 1997) (quoting *Bergquist v. Penterman*, 134 A.2d 20, 28 (N.J. Super. Ct. App. Div. 1957), *cert. denied*, 134 A.2d 832 (N.J. 1957)).

17

Here, Follors testified that before taking matters into her own hands, she first attempted to get several of Defendant's employees to help her retrieve the shoe. (*See* PSSMF ¶ 14 ("[Follors] had been instructed by security to seek assistance from guest relations."); *id.* ¶ 15 ("[Follors] spoke with a guest relations representative, who ultimately also instructed [Follors] to retrieve the shoe herself from the roof of Zumanjaro.").) According to Follors's testimony, she was then permitted and instructed on how to retrieve her shoe from Defendant's ride operator Omeally. (*See id.* ¶¶ 8, 20; Pl.'s Dep. Tr. 98:15-99:6.) Viewing the evidence in the light most favorable to Follors, the Court does not find that Follors's conduct was so out of the ordinary that it constituted an intervening, superseding cause of injury that warrants the Court to find as a matter of law as to proximate cause.

As such, because Follors has pointed to sufficient evidence to create a trial issue of fact as to the issue of causation, as articulated above, Defendant's Motion on the issue of proximate causation is denied.

IV.    **CONCLUSION**

For the above reasons, Defendant's Motion for Summary Judgment is denied. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE